## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

Deborah Laufer,

        Plaintiff,

   v.

Michael S. Rasmus, d/b/a
Harbor's Edge Motel,

        Defendant.

Case No: 3:20-CV-680-WMC

**DEENDANT'S
MEMORANDUM
IN SUPPORT OF HIS
MOTION TO DISMISS OR
FOR SUMMARY
JUDGMENT**

---

Plaintiff Deborah Laufer ("Laufer") has filed suit against Defendant Michael S. Rasmus, d/b/a Harbor's Edge Motel ("Harbor's Edge"), alleging she is a disabled individual under the Americans with Disabilities Act ("ADA"). Compl. ¶ 1. She alleges she is disabled and has trouble with mobility, alleging she "is unable to engage in the major life activity of walking more than a few steps without assistive devices." *Id.* She has to use a wheelchair to get around when she is outside her home, is vision impaired, has limited use of her hands, and requires various modifications guaranteed under the ADA. *Id.* Plaintiff further alleges she has been injured by Harbor's Edge because Harbor's Edge's website does not disclose or permit booking of ADA compliant rooms on its website, and seeks injunctive relief requiring Harbor's Edge to comply with the certain section of the ADA pertaining to websites and the awarding of attorney fees. *Id.* at ¶¶ 9-11.

However, there are no completely ADA compliant rooms at the Harbor's Edge Motel. Affidavit of Michael S. Rasmus ("Rasmus Aff.") at ¶¶ 5-8.[1] The original building at Harbor's Edge was built in the early 1900s, and the motel structure was built in 1981. *Id*. at ¶¶ 5-6. Harbor's Edge has not undergone construction – stated in the ADA as an "alteration" – to any of its rooms since the date the ADA went into effect – January 26, 1993. *Id*. at ¶¶ 7, 9. Therefore, Harbor's Edge's lack of ADA accessible rooms means its website is compliant with ADA – a potential motel patron cannot book a room that does not exist.

Further and more fundamentally, Laufer lacks standing to proceed with this claim. As she has done with the 460+ other strikingly similar lawsuits she has filed around the country since October 2019, Laufer never pleads she intended to book a room at Harbor's Edge. *See generally* Complaint. She never pleads she previously visited Wisconsin. *Id.* She does not plead she intends to ever visit Wisconsin. *Id.* She has not pled an actual injury, did not provide Harbor's Edge with the opportunity to correct the alleged website deficiencies, and—in the same fashion as those 460+ other strikingly similar lawsuits— seeks not to enforce the ADA but to line her and her attorneys' pockets.[2] Because this Court

---

[1] Because Laufer seeks injunctive relief, consideration of facts and affidavits outside the pleadings is proper. See Western District of Wisconsin Procedure to be Followed on Motions for Injunctive Relief, last accessed on September 30, 2020 and available online at https://www.wiwd.uscourts.gov/sites/default/files/Injunctive_Relief.pdf.

[2] Magistrate Judge Crocker previously questioned Plaintiff's standing in its order on September 3, 2020. [Dkt No. 5]. Plaintiff filed a responsive memorandum and an affidavit from Ms. Laufer on September 14, 2020. [Dkt. No. 6]. Plaintiff failed to comply with FRCP 5 and did not serve either this Court's order or her Memorandum and Affidavit on Defendant at any point, neither when the complaint was served on September 15, 2020 nor any time since. Rasmus Aff. at ¶ 3.

does not have subject matter jurisdiction, and because Laufer has failed to state a claim upon which relief can be granted, this Court should dismiss Plaintiff's claims with prejudice. It should also award Defendant his costs and attorney fees in defending this shakedown disguised as an ADA claim.

## RESPONSE TO FACTUAL ALLEGATIONS

### 1. Harbor's Edge's Construction History Falls Outside ADA's Parameters for Accessibility of Hotel Rooms

The ADA accessibility standards apply to new construction and existing buildings that have been altered, added onto, or remodeled since January 26, 1993. Harbor's Edge publicly advertises it was built "more than 50 years ago." www.harborsedgemotel.com. In fact, the original building was built in the early 1900s, and the motel structure was completed in 1981. Rasmus Aff. at ¶¶ 5-6. Harbor's Edge has not undergone alterations, additions, or remodeling since January 26, 1993. *Id*. at ¶¶ 7, 9. In complying with its obligations under the ADA as an existing building, Harbor's Edge has endeavored to remove any barriers that were readily achievable. *Id*. at ¶ 8.

Public accommodations are required to remove barriers only when it is "readily achievable" to do so. 28 C.F.R. § 36.304. "Readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. *Id.*

Projects that increase, expand, or extend a facility's gross floor area or height of a facility are considered additions (as defined in §106.5) and must comply with the requirements of the standards applicable to new construction.

Alterations are defined in the standards (§106.5) as "a change in a building or facility that affects or could affect the usability of a building or facility or portion thereof." Many types of projects are covered as "alterations," including remodeling, renovation, rehabilitation, reconstruction, restoration,

resurfacing of circulation paths or vehicular ways, and changes or rearrangement of structural parts, elements, or walls. Normal maintenance, reroofing, painting or wallpapering, or changes to mechanical and electrical systems are not considered alterations unless they affect a facility's usability.

If alterations are limited only to elements in a room or space, then the standards apply only to the elements altered. Similarly, where spaces are altered, the standards apply to those spaces that are altered. If a room or space is completely altered (or built new as part of an alteration), the entire room or space is fully subject to the standards. Compliance is required to the extent that it is technically feasible.[3]

Harbor's Edge was an existing building when the ADA was enacted, and there have been no alterations, additions, or remodeling done since the ADA came into effect. Rasmus Aff. at ¶¶ 5-9. Consequently, Defendant has no ADA compliant rooms for Plaintiff (or anyone who was actually interested in coming to Bayfield, Wisconsin) to book.

### 2. Plaintiff's Allegations Do Not State an Injury

Not only is Defendant not subject to the regulations complained of, but Plaintiff has not alleged an actual injury. A fundamental tenet of the American judicial system is that a lawsuit must be premised upon a plaintiff having suffered an actual injury. Hypothetical injuries are not actionable. Plaintiff alleges she lives in Florida, Compl. ¶ 1, but alleges no intention to visit Wisconsin, any previous visits to Wisconsin, or any invitations, intentions, or vacation plans that include Wisconsin. See generally, *Complaint*. Couple this lack of factual basis with Plaintiff having sued over 460 places of lodging in 15 states and 23

---

[3] United States Access Board, Guide to the ADA Standards: Chapter 2: Alterations and Additions, available online at https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/guide-to-the-ada-standards/chapter-2-alterations-and-additions (last accessed September 30, 2020).

different federal courts around the country in 11 months,[4] including two others in this District,[5] and it is clear Plaintiff has no intent to visit Bayfield, Wisconsin, fully 1,500 miles from Alachua County on the other side of the country from where she lives.[6] Her affidavit filed in support of standing alleges she intends to visit Chicago and then drive through Wisconsin "as soon as the Covid crisis is over and it is safe to travel." September 9, 2020 Declaration of Deborah Laufer ("Laufer Dec.") at ¶ 5. Defendant presumes Laufer would offer the same or similar unspecified travel plans for all 15 states she has filed suit in. This is too remote to be an actual injury. Here, Plaintiff has not alleged any facts that support an actual injury, and the case should be dismissed.

Plaintiff's complaint is boilerplate and asserts factually opposing statements. In paragraph 10, Plaintiff states she "intends to revisit Defendant's websites and/or online reservations system in order to test it for compliance." Compl. ¶ 10. Then in paragraph 11, Plaintiff states she "has re-visited the websites and encountered the same conditions described above. Plaintiff is continuously aware that the subject websites remain non-compliant and that it would be a futile gesture to revisit the websites as long as those violations exists unless she is willing to suffer additional discrimination." She cannot both

---

[4] See spreadsheet downloaded from Pacer.gov on September 17, 2020, of 462 actions filed by Deborah Laufer as a plaintiff since October 16, 2019 listing the nature of suit code 446 – violation of the ADA-Other, attached as Exhibit 1 to the Declaration of Rolf Fiebiger ("Fiebiger Dec."), filed in support of this Motion.
[5] *Laufer v. Barker's Island Hotel, LLC, et al.*, case no. 3:20-cv-660-wmc and *Laufer v. Wood River, Inn Inc.*, Case No. 3:20-cv-661-wmc.
[6] In keeping with the "boilerplate" complaint, Defendant points out that in her complaint, Plaintiff avers she is a resident of Alachua County, Florida. Compl., ¶ 1. In her affidavit Plaintiff swears she is a resident of Pasco County, Florida. Laufer Dec. at ¶ 6. This likely scrivener's error is further evidence that this complaint is simply passed around and used for all of these alleged website violations.

plan to revisit the website and also declare she will not revisit the website because it would be futile. Plaintiff's boilerplate complaint, which she filed without conducting any investigation into the applicability of the statutes, and now seeks injunctive relief and attorney's fees, is not an ADA enforcement action, it is a shakedown. The injuries alleged are generic – frustration and humiliation, sense of isolation and segregation, Compl. ¶ 12 – and do not state actual injuries. She alleges no specific people who have subjected Plaintiff to humiliation, she has inserted herself into the public sphere with these allegations which alleviate the actual humiliation she alleges to have experienced, and cannot be frustrated by being unable to complete an action she did not actually intend to take. If she was not actually going to book a room at the hotel, she was not frustrated in that pursuit.

Plaintiff alleges she is an ADA tester, compl. ¶ 2, which she alleges conveys standing. But ADA Tester cases not only do not convey standing, but as with all other cases they require an actual injury. ADA testers have to go to the business and see if they are ADA compliant. ADA Testers cannot use Google Maps to look at pictures of a business and allege the business is not compliant with accessibility laws. Testers have to actually experience the ramps that are too steep, or doorways that are too narrow, or the bathrooms without grab bars. The same here.

She further alleges irreparable harm, Compl. ¶ 18, but a phone call could have cured the issue. Plaintiff further states she is visually impaired but has alleged no hearing impairment. She could have called Harbor's Edge to find out the answers to her questions but refused to do so – instead filing suit to shakedown Harbor's Edge.

Finally, Plaintiff alleges venue is proper in this District because the injury occurred in this District. Compl. ¶ 4. However, Plaintiff has never set foot in the Western District of Wisconsin. Defendant admits it is located in this District and on that basis can be hailed into court in this District, but the allegation that the alleged injury "occurred in this district" is a legal conclusion that Defendant challenges. Plaintiff avers in her affidavit that she "was in my own home in Pasco County when I visited these websites." Laufer Dec.at ¶ 6. Any alleged injury did not occur in this District. This keeps with the generic allegations in her complaint, and should cast doubt on all that is alleged in Plaintiff's complaint.

## LEGAL STANDARD

### A.   MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted. *Diamond Center v. Leslie's Jewelry Mfg. Corp*., 562 F.Supp.2d 1009, 1013 (W.D. Wis. Mar. 17, 2008) (Crabb, J.). (citing *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997)). Dismissal is appropriate when a plaintiff's complaint fails to provide enough factual allegations to "raise a right to relief above the speculative level." *Diamond Center*, 562 F.Supp.2d at 1013 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 1965, 167 L.Ed.2d 929 (2007)); *see also E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007). When deciding a motion to dismiss for failure to state a claim courts are generally restricted to an analysis of the complaint. *Diamond Center*, 562 F.Supp.2d at 1013 (citing *Hill v. Trustees of Indiana University*, 537 F.2d 248, 251 (7th Cir. 1976) (citation omitted)).

The Court is not bound to accept a plaintiff's legal conclusions or conclusory allegations. *Sullivan v. Town of Stockholm*, 402 F.Supp.3d 534, 538 (W.D. Wis. 2019). "The law is clear that when considering a motion that launches a factual attack against jurisdiction, '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009) (citing *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007))); *see also, e.g., United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 n. 2 (7th Cir. 2002); *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

"In other words, the district court's ability to consider evidence beyond the pleadings derives from the importance of limiting federal jurisdiction. Because such 'jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth.'" *Apex Digital, Inc.*, 572 F.3d at 444 (citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)).

## B.    STANDING

To have standing in federal court, the plaintiff has to meet a three part test. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The first part is the plaintiff must have suffered an "injury in fact"—defined as a concrete and particularized, actual or imminent invasion of a legally-protected interest. *Id.* at 560;

*accord, Scheibe v. National Bd. of Medical Examiners,* 424 F.Supp.2d 1140, 1144 (W.D. Wis. 2006) (citing *McConnell v. Federal Election Commission,* 540 U.S. 93, 225, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003); *Gillespie v. Dimensions Health Corp.*, 369 F.Supp.2d 636, 640 (D. Md. 2005)). Therefore, to show an injury in fact, the plaintiff has to satisfy a second test that itself has two independent criteria. First the injury must be concrete and particularized. *Lujan*, 504 U.S. at 560 (citations omitted). And then, the plaintiff must show the injury was "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). After showing an injury in fact, the plaintiff must demonstrate a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42, 96 S.Ct. 1917 1926, 48 L.Ed.2d 450 (1976)). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (citing *Simon*, 426 U.S. at 38, 43, 96 S.Ct. at 1924, 1926).

The party invoking federal jurisdiction bears the burden of establishing these elements. *Scheibe*, 424 F.Supp.2d at 1144; *Lujan*, 504 U.S. at 560 (citing *FW/ PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.E.2d 343 (1975)). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the

burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 560 (citations omitted).

## C. INJUNCTIVE RELIEF

Where a plaintiff seeks prospective injunctive relief, they must show that they are "immediately in danger of sustaining some direct injury." *Scheibe*, 424 F.Supp.2d at 1144 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citation and quotations omitted)); *see also Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) (plaintiff seeking injunctive relief must show "significant likelihood and immediacy of sustaining some direct injury").

In addition, the party must show that their injury is "fairly traceable" to the defendant's conduct and that there is a "substantial likelihood" that the requested relief will redress the harm. *Scheibe*, 424 F.Supp.2d at 1144 (citations omitted). Without such a showing, a federal court has no authority to consider the party's arguments on the merits. *Id.* (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 778, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else."). Plaintiff bears the burden of establishing by a preponderance of the evidence that standing exists. *Scheibe*, 424 F.Supp.2d at 1144 (citing *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)).

<u>**ARGUMENT**</u>

**A. Harbor's Edge's Age and Lack of Accessible Guest Rooms Means its Website is Compliant with the ADA**

Under the 2010 ADA Standards, places of lodging that were constructed prior to January 26, 1993 and have not been altered or added since that date are not required to provide fully ADA compliant rooms. 28 C.F.R. § 36.406(a) Appendix. Instead, they are required to remove barriers "to the extent readily achievable." 28 C.F.R. § 36.304. The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense. 42 U.S.C. § 12181(9); also, 28 C.F.R. § 36.304.

A recent Northern District of California case sets out when buildings are required to meet which standards:

> There are three categories of accessibility requirements under Title III of the ADA—the "new construction" provisions, which apply to public accommodations constructed after January 26, 1993; the "alteration" provisions, which apply to post-January 26, 1992 alterations to buildings that existed as of that date; and the "readily achievable" provisions, which apply to unaltered portions of buildings constructed before January 26, 1993.
>
> All facilities built for first occupancy after January 26, 1993 are required to be "readily accessible to and usable by persons with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of the ADAAG, 28 C.F.R. pt. 36, app. A. See 42 U.S.C. § 12183(a)(1). All facilities built for first occupancy after January 26, 1993 must comply with the ADAAG. 28 C.F.R. § 36.406.
>
> Because Taco Bell 4518 was constructed in 1991, it is not governed by the "new construction" provisions of Title III. However, both the "alteration" and the "readily achievable" provisions do apply. Under the "alteration" provisions, the altered portion of any existing building altered after January 26, 1992 is required, to the maximum extent feasible, to be "readily accessible to and useable by" individuals with disabilities. 42 U.S.C. § 12183(a)(2). To meet this standard, alterations must comply with the ADAAG. 28 C.F.R. § 36.406(a).

> In existing but unaltered facilities, barriers must be removed where it is
> "readily achievable" to do so. The removal of barriers is "readily achievable"
> when it is "easily accomplishable and able to be carried out without much
> difficulty or expense." 42 U.S.C. §§ 12181(9), 12182(b)(2)(A)(iv).

*Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. Oct. 5, 2011). Harbor's

Edge was constructed for first occupancy before January 26, 1993. Rasmus Aff. at ¶¶ 5-6.[7]

Harbor's Edge has not been retrofitted or remodeled, has not added rooms, and has not

undergone any alterations since January 26, 1993. *Id*. at ¶¶ 7, 9. Consequently, there are no

rooms available at Harbor's Edge that are fully ADA compliant. Thus, Harbor's Edge

cannot put ADA compliance on its website, and to the extent it is required to comply with

the regulation Harbor's Edge is complying with the ADA website statute by not stating that

it offers accessible rooms. Put another way, it would be false advertising for Harbor's Edge

to put anything about ADA Compliance on its website when holding itself out as ADA

Compliant would invite Plaintiff and those potential guests who are similarly situated to

believe there were rooms available that did comply with the modifications and accessibility

provisions set out in the 2010 Standards. As a facility constructed prior to January 26, 1993,

Harbor's Edge is not obligated to and does not comply with those accessibility standards.

Accordingly, Harbor's Edge's website is ADA compliant under the law.

Plaintiff alleges she was injured because the website "does not identify accessible

rooms," of which there are none; does "not have sufficient information about accessibility

in the hotel (such as the availability of a roll-in shower, whether there are accessible

---

[7] See also the motel's website, which states, "Independently owned and operated, Harbor's Edge
Motel has been serving guests for over 50 years." www.harborsedgemotel.com (last accessed on
September 29, 2020).

entrances to the hotel, availability of any accessible rooms, etc.)", which modifications have not been made and would require Defendant to list all of the ADA compliant criteria and state they are not available; and "the websites did not allow for booking of accessible rooms," again, which there are none. Compl. ¶ 9.

Because Plaintiff's entire complaint rests solely on the alleged violation of the website statute, and because Harbor's Edge is not required to comply with the ADA 2010 standards that would require its website to differentiate between ADA compliant rooms and noncompliant rooms, Plaintiff has stated a claim upon which relief cannot be granted and should be dismissed.

### B. Plaintiff Lacks Standing Because She Cannot Show Irreparable Harm Since She Has No Actual Plans to Travel To Wisconsin

More fundamentally, Plaintiff's claim cannot proceed because she lacks standing to bring a lawsuit. On September 3, 2020, Magistrate Judge Crocker *sua sponte* requested briefing from Plaintiff as to her standing—or lack thereof—to bring this action. Laufer Memorandum in Support of Standing, September 14, 2020 ("Standing Memo"). [Dkt. No. 5].[8] Plaintiff filed a brief of more than 20 pages, arguing that no court has ever denied Ms. Laufer standing, and that there does not need to be a physical nexus, and the proximity test is irrelevant. Standing Memo, pp. 4-21. But those arguments miss the mark, as another Court has already ruled.

---

[8] Despite the requirements set forth in FRCP 5, and the fact that her complaint was not served on Defendant until September 15, 2020, Plaintiff never served Docket Nos. 4 or 5 on Plaintiff. Rasmus Aff. at ¶ 3.

While conspicuously not addressed in her brief, Plaintiff's own standing on this same boilerplate complaint has already been taken up twice by the Honorable Brenda K. Sannes, District Judge in the Northern District of New York. Ms. Laufer filed "approximately 30 nearly identical cases against different defendants in the Northern District of New York," and Judge Sannes addressed them all in kind. *Laufer v. Adirondack Lakeview, LLC*, 1:20-cv-845 (BKS/ML), Order Sept. 17, 2020, p. 1 (N.D. N.Y. 2020) ("*Adirondack* Order," attached as Exhibit 2 to Fiebiger Dec.). In the *Adirondack* Order, Judge Sannes stated, "There appears to be a serious question as to whether Plaintiff has established standing, in these cases, or any of her other cases, and thus whether the Court has subject matter jurisdiction over these actions. See, e.g., *Laufer v. Laxmi & Sons, LLC*, 1:19-cv-01501 (BKS/ML) (Dkt. No. 15, at 7, May 6, 2020)." *Adirondack* Order at p. 2. Judge Sannes continued her analysis of Laufer's complaint:

> There are no facts in the Complaint or Plaintiff's affidavit indicating that she has ever traveled to Rensselaer, New York, or anywhere in New York, or that she has any reason to travel anywhere in New York or any reason to seek lodging anywhere in New York. Plaintiff alleges that she is a 'tester' for the ADA. (Dkt. No. 1, ¶ 2). However, her status as a 'tester' does not appear to be sufficient to establish subject matter jurisdiction in this action. See [*Harty v.*] *Greenwich Hosp. [Grp., LLC*], 536 F. App'x [154,] 155 [2d Cir. 2013) (finding the plaintiff's "assertion that he visits public accommodations as an ADA 'tester'" failed to establish standing as it lacked "the requisite link to Stamford, Connecticut"—the location of the defendant's Hampton Inn); *see also Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 656 (4th Cir. 2019) (holding that a plaintiff who was ineligible to be a member of a credit union failed to establish standing to bring an ADA claim concerning its website because tester status "cannot create standing in the absence of an otherwise plausible assertion that a return to the website would allow [the plaintiff] to avail himself of its services").

*Adirondack* Order, pp. 11-12.

Further, conclusory allegations and legal conclusions are not sufficient to convey standing and allege an injury for purposes of initiating a lawsuit. See e.g., *Diamond Center, supra,* 562 F.Supp.2d at 1015 (Crabb, J.). Unfortunately, conclusory allegations in ADA cases are commonplace. *Alvarez-Vega ex rel.  E.A.L. v. Cushman & Wakefield/Prop. Concepts Commercial,* 290 F.Supp.3d 131, 136 (D. P.R. 2017). Conclusory allegations of noncompliance with ADA standards have even led to courts denying entry of default judgments. *Kennedy v. Orltell, LLC,* 2018 WL 1152393, at *1 (M.D. Fla. Mar. 5, 2018); *Longhini v. Rayan & Assocs., Inc.,* 2018 WL 2225122, at *3 (M.D. Fla. Apr. 27, 2018), report and recommendation adopted, 2018 WL 2215290 (M.D. Fla. May 15, 2018); *Kennedy v. Bindi, Inc*., 2018 WL 2211420 (M.D. Fla. Apr. 26, 2018), report and recommendation adopted, 2018 WL 2197754 (M.D. Fla. May 14, 2018).

Courts in this District have determined that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.,* 2018 WL 83516, *8 (W.D. Wis. 2018) (citing *Iqbal,* 556 U.S. at 678). See also *Riley v. Vilsack*, 665 F. Supp. 2d 994, 1002 (W.D. Wis. 2009) ("The Court made it clear in *Iqbal* that plaintiffs do need to plead facts; conclusions are not enough."). That is what we have here, as a recent claim in another federal court alleging noncompliance with ADA's website requirements – which allegations bear a striking similarity to Plaintiff's – analyzes these conclusory allegations.

> First, plaintiff's claim that he intends to visit the website "in the near future," and thus will again be harmed by defendants' alleged failure to comply with 28 C.F.R. § 36.302(e)(1), is vague and conclusory. The complaint's allegations, taken as true, suggest only that plaintiff intends to return to the online reservation systems to test for statutory violations of the ADA *vis-à-*

*vis* 28 C.F.R. § 36.302(e)(1). This is because plaintiff claims in conclusory fashion that he might return to the websites to book lodging, and fails to allege factual allegations upon which the Court can reasonably infer plaintiff intends to return to the websites to book a room or utilize defendant's services—facts that would support an inference of a particularized and concrete injury, and real threat of future harm. What remains are plaintiff's allegations that he plans to visit websites, to test those websites for ADA compliance, and that defendant's alleged violations of the ADA's regulatory framework vis-à-vis those websites will cause him injury. As noted above, allegations of "a bare procedural violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." See *Spokeo, Inc. v. Robins,* 136 S. Ct. at 1549. Plaintiff's allegations are just that.

Second, the complaint's allegations do not "show [plaintiff's] plausible intention or desire to return [to the websites] but for the [alleged] barriers to access." See *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 WL 1751785, at *7. Here, plaintiff affirmatively alleges his intent to return to the subject websites— to test for compliance with the ADA— despite alleged barriers to access. In other words, plaintiff intends to revisit the subject websites to test for ADA compliance but fails to set forth any allegations suggesting his ability to do so is somehow impeded by defendant's conduct or failure to comply with the ADA and its accompanying regulations. For this additional reason, plaintiff fails to demonstrate standing to seek injunctive relief.

…

But defendant's motion to dismiss comprises a facial challenge to the Court's subject matter jurisdiction. Because the motion is "based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d at 56. Plaintiff is represented by counsel in this matter and thus "is not entitled to any of the latitude afforded to pro se litigants in adjudicating a motion to dismiss." *Harty v. Nyack Motor Hotel, Inc.,* 2020 WL 1140783, at *3 (S.D.N.Y. Mar. 9, 2020) (emphasis added). Indeed, "counseled plaintiffs may not 'use their opposition to [a] motion to dismiss to raise new claims or arguments.'" *Id.* (quoting *Chamberlain v. City of White Plains,* 986 F. Supp. 2d 363, 390 n.19 (S.D.N.Y. 2013)) (alteration in original).

*Harty v. West Point Realty*, --- F.Supp.3d ----, 2020 WL 4570595, *4-5 (S.D.N.Y. Aug. 7, 2020). The Court in *Harty* also took the plaintiff to task for making allegations of ADA

noncompliance when there are actual injuries that people suffer as a result of ADA noncompliance, and provided two concrete examples.

In short, the bare allegations of the complaint do not meet the minimum requirements of Article III standing. Indeed, plaintiff's spartan assertions stand in stark contrast to allegations made in similar ADA cases involving deficient website information, in which concrete injury was sufficiently alleged. For example, in *Juscinska v. Paper Factory Hotel, LLC*, a plaintiff with cerebral palsy plausibly alleged in her amended complaint a concrete injury predicated on a defendant hotel's failure to comply with 28 C.F.R. 36.302(e)(1). 2019 WL 2343306, at * 1 (S.D.N.Y. June 3, 2019). There, the plaintiff plausibly alleged that while arranging accommodations for an upcoming vacation, she was unable to reserve lodging at the defendant's hotel due to an absence of sufficient accessibility information on the hotel's website. (*Id*.). The plaintiff alleged particular issues with the website, what information was lacking, and what accessibility information, if given, would have helped her make an informed booking decision. (*Id*.).

In another recent case, *Camacho v. Vanderbilt University*, a court concluded that a disabled plaintiff alleged a concrete injury by claiming he wished to attend a four-year college, visited the defendant university's website to obtain accessibility information, but was precluded from obtaining such information because the defendant's website was not ADA-compliant. 2019 WL 6528974, at *10 (S.D.N.Y. Dec. 4, 2019). The court determined the plaintiff plausibly alleged a real threat of future harm because he intended to return to the school's website to "learn more about [the school], and then make an informed choice regarding" whether it would be worth visiting the school in person." *Id*. at *11. In other words, the plaintiff alleged more than a mere intent to visit the school's website to test it for statutory compliance; he wished to utilize the website to determine whether the school would be worth visiting.

Here, unlike *Juscinska* and *Camacho*, plaintiff does not adequately plead a concrete and particularized injury predicated on defendant's alleged failure to comply with 28 C.F.R. 36.302(e)(1). And his status as a "tester," alone, does not sufficiently establish an adequate basis for Article III standing. *See Feltzin v. Stone Equities, LLC*, 2018 WL 1115135, at *9 (E.D.N.Y. Feb. 8, 2018) ("While it is unclear whether the Second Circuit has fully embraced 'tester' status (i.e., an individual who seeks out and sues businesses for alleged violations of the ADA) as a basis for Article III standing, it is clear that an ADA 'tester' must still satisfy the Article III standing prerequisites.").

17

*Harty*, --- F.Supp.3d ----, 2020 WL 4570595, at *5. Here, Plaintiff did not intend to book a room. She intended to check to see if Defendant was compliant with the law. There is no injury actually suffered, as there was in *Juscinska* and *Camacho*.

Case law regarding standing alleging violations of the ADA is not restricted to other Circuits. Magistrate Judge Crocker requested briefing in consideration of the Seventh Circuit's holding in *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019) concerning the Article III standing of ADA compliance testers with similar website accessibility claims for injunctive relief. [Dkt. No. 5]. And *Carello* provides significant guidance in the analysis of this case.

The Court in *Carello* made several important statements regarding standing, including affirming the principle that "A tester must still satisfy the elements of standing, including the injury-in-fact requirement." *Carello*, 930 F.3d at 833 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75, 102 S.Ct. 1114 (1982)). The court further stated that, while a dignitary harm is cognizable,

> [D]ignitary harm stemming from the mere knowledge that discriminatory conduct is occurring is an "abstract stigmatic injury" that the plaintiff lacks standing to vindicate. *Allen [v. Wright]*, 468 U.S. [737] at 755–56, 104 S.Ct. 3315 [1984] (citation omitted); *see also Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d at 873, 879 (7th Cir. 1996) ("[N]othing suggests that [the black plaintiffs alleging racial discrimination] suffered anything other than indignation: personal offense from the knowledge that unconstitutional conduct is occurring. Indignation is not an injury-in-fact sufficient to confer standing.").

Carello, 930 F.3d at 834. Plaintiff here has no concrete intention to visit Wisconsin and no intention to actually book a room at Harbor's Edge. "Indignation is not an injury-in-fact." *Id*. (citing *Clay*, 76 F.3d at 879). Plaintiff's claims should be dismissed for lack of standing.

18

This District has assessed standing for seeking injunctive relief for violation of Title III of the ADA in the past, and found the plaintiff lacked standing in a similar capacity to this case. In *Scheibe*, supra, a medical student had asked for a reasonable accommodation to take the Step 1 and Step 2 medical examination boards. 424 F.Supp.2d at 1143. After passing those exams, the plaintiff expressed an intention to sit for the third set of exams, Step 3. *Id.* The Court found simply having an intention to sit for the boards was not sufficient to convey standing if the plaintiff had not registered for the examination. *Id.* at 1144. The same here, where Plaintiff has no specific intention to come to Wisconsin. Laufer Dec. at ¶ 5.

The Court in *Scheibe* further found the plaintiff was not in "immediate danger of sustaining direct injury," and therefore did not have standing for the injunctive relief he was seeking. *Scheibe*, 424 F.Supp.2d at 1143-44. Ms. Laufer, even in the light most favorable to her, is also not in immediate danger of sustaining direct injury, as she has no intention of actually coming to Wisconsin until some unknown date in the future. Laufer Dec. at ¶ 5. "Speculation or a possibility of future harm is not sufficient to support standing to seek injunctive relief." *Id.* at 1145 (citing *Lyons*, 461 U.S. at 110, 103 S.Ct. 1660; *Palmer v. City of Chicago*, 755 F.2d 560, 572 (7th Cir. 1985)).

Even if the complete ADA standards for accessible rooms were applicable to Defendant, which they are not; and even if Defendant had violated Title III of the ADA, which it has not; this would be insufficient to establish plaintiff's standing to seek injunctive relief with respect to speculative future harms. *Scheibe*, 424 F.Supp.2d at 1145; *Stewart v. McGinnis*, 5 F.3d 1031, 1037 (7th Cir. 1993) ("evidence of past wrongs alone is

insufficient to merit equitable relief"); *Hoepfl v. Barlow*, 906 F.Supp. 317, 320 (E.D. Va. 1995) ("established standing rules preclude a plaintiff from obtaining injunctive relief based only on events that occurred in the past, even if the past events amounted to a violation of federal law."). Rather, plaintiff must prove that she is in imminent danger of being denied an accommodation by defendant in the future. She cannot do that here, and therefore lacks standing to proceed.

In her brief in support of standing, Plaintiff tries to overcome this requirement when she avers this case is substantially similar to *Havens Realty*, supra, 455 U.S. 363 (1982) for the proposition that intent to visit is not required. Standing Memo., pp. 14-15. But in *Havens Realty*, the real estate agent was covered by the statute, and actually made discriminatory representations – that the home was unavailable to rent to a black tester while a white tester was told the home was available to rent. *Havens Realty*, 455 U.S. at 374-75. Here, Defendant is not covered by the Act complained of, as Harbor's Edge was built before January 26, 1993 and has not undergone alterations or remodeling since that time. Rasmus Aff. at ¶ 5-6. Ms. Laufer complains that she has "booked a room at hotels whose websites claim they are 'accessible,' only to find that this claim is untrue." Laufer Dec. at ¶ 3. Defendant's website does exactly what Laufer asks of it. It does not permit booking of accessible rooms because there are none available to book. Rasmus Aff. at ¶ 11. The Fair Housing Act at issue in *Havens Realty* applies to all offerings of housing. By contrast, the ADA is not an all-encompassing statute; it only covers existing buildings remodeled, added to, or altered after January 26, 1993. Harbor's Edge is not one of those buildings. Defendant is compliant with the law. Plaintiff's claims should be dismissed.

While it is the website that is at issue in this case, it is the specific intent to come to Wisconsin and book a room at Defendant's hotel that is the injury. Nowhere in Plaintiff's complaint does she allege she is going to visit Wisconsin. Her affidavit submitted after the complaint was filed does not specify when she intends to come, but states she has "plans to travel to Wisconsin as soon as the Covid crisis is over and it is safe to travel." Laufer Dec. at ¶ 5. Defendant presumes this is the same allegation Plaintiff makes when confronted with standing questions in each of her 460+ lawsuits in 15 states in 23 different federal districts. There is no specific intention, no dates, she is not trying to book a room for a trip to Madeline Island. The alleged injury is too speculative. Further, neither Wisconsin nor Florida has travel restrictions related to COVID-19. Plaintiff could come to Wisconsin tomorrow. When will it be "safe to travel"? Under whose definition does it need to be "safe to travel"? The speculative nature of Plaintiff's alleged injury fails to satisfy the injury in fact element of standing, and Plaintiff's complaint should be dismissed on subject matter jurisdiction grounds.

**C. "Reasonable Investigation" Could Have Prevented This Lawsuit and Provides a Basis for Awarding Attorney Fees to Defendant**

The Americans with Disabilities Act provides that "the court in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205. Strong policy considerations support the awarding of attorney fees to plaintiffs in ADA cases. See discussion in *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). However, because these policy and enforcement considerations are not present

when a defendant prevails, and in fact may have a chilling effect on ADA lawsuits, fees and costs are rarely awarded to defendants.

Consequently, defendants are awarded attorney fees when they can demonstrate that the "plaintiff brought this action in subjective bad faith, or that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Whitford v. Gill*, 402 F.Supp.3d 529, 534 (W.D. Wis. 2019) (citing *Bisciglia v. Kenosha Unified Sch. Dist. No. 1,* 45 F.3d 223, 227–28 (7th Cir. 1995) (quoting Christiansburg Garment Co., 434 U.S. at 421. A lawsuit is frivolous "if it has no reasonable basis, whether in fact or in law." *Roger Whitmore's Auto. Servs. v. Lake Cty., Ill.*, 424 F.3d 659, 675 (7th Cir. 2005) (quoting *Tarkowski v. Cty. of Lake*, 775 F.2d 173, 176 (7th Cir. 1985)). Here, Plaintiff's lawsuit is frivolous, or at least unreasonable and without foundation, and Plaintiff should be required to pay Defendant's costs and attorney fees.

The website upon which Plaintiff filed her lawsuit states on the main page, "Independently owned and operated, Harbor's Edge Motel has been serving guests for over 50 years."[9] Notice on the website is provided to everyone that Harbor's Edge has been around since at least the 1960s, and that Harbor's Edge is likely an "existing building" under the ADA. FRCP 11 requires parties to conduct a reasonable investigation of the facts and law necessary to support their claims. *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823-24 (7th Cir. 2001) (citations omitted). Particularly in light of Plaintiff's injecting herself into federal districts throughout the country and suing more than 460

---

[9] www.harborsedgemotel.com, last accessed on September 29, 2020.

hotels in the previous year with essentially a boilerplate complaint, a reasonable investigation here should have included finding out if, in fact, Harbor's Edge was subject to either the 1991 or 2010 ADA standards. A phone call or, if the element of surprise was required, pulling permit and construction records from Bayfield County would have told Plaintiff that Harbor's Edge was not, in fact, subject to the ADA standards.

Similar ADA litigation around the country has produced attorney fee awards for a defendant. In *Peters v. Winco Foods, Inc.*, 320 F.Supp.2d 1035 (E.D. Cal. 2004), the Court awarded attorney fees to the defendant after finding the plaintiff's form complaint – the plaintiff had filed 30 basically identical complaints in the District – included sweeping allegations that upon minimal investigation would have shown were not factually supported. *Id.* at 1040. The Court further stated, ""Moreover, the circumstances of this case suggest that it was filed for the purpose of obtaining a quick settlement, rather than remedying barriers to access for the disabled." *Id.*

Precedent in this Circuit supports an award of attorney fees for Defendant. In *Curry v. A.H. Robins Co.,* 775 F.2d 212 (7th Cir. 1985), the Court of Appeals held that a prevailing defendant may be awarded fees incurred in defending against a frivolous claim or portion thereof, even if other claims asserted by the plaintiff were not frivolous. *Id.* at 220-21. Here, Plaintiff (or her counsel) simply reading the front page of the website – the website she alleges is the entire basis of her claim – should have prompted additional investigation.

Plaintiff injected herself into a local hotel's business in Bayfield, Wisconsin, 1,500 miles from her home, in a city where she has no actual intention to travel (or, at best, intends to travel to 16 different states simultaneously "just as soon as it is safe"), on tenuous-at-best standing grounds, to accuse Defendant of failing to comply with a regulation that does not apply to Harbor's Edge. Plaintiff's failure to investigate, contact Harbor's Edge, or send any form of communication before filing a lawsuit and seeking attorney fees should not be a burden borne by Defendant. The claim is brought without a factual foundation and is one of a plethora of suits brought by this plaintiff to shakedown hotels around the country. Plaintiffs who allege they are testers of the ADA and insert themselves in jurisdictions around the country should be held to a higher standard, and here, Plaintiff should have known the claim had no basis. Plaintiff should pay Defendant's costs and attorney fees.

## **CONCLUSION**

If the basis for the lawsuit is the website, then Harbor's Edge has no requirement to list ADA compliant rooms on its website because there are no ADA compliant rooms on the property. If the basis for the lawsuit is the prospective visit to Wisconsin, then Plaintiff has no standing to proceed because she is not alleging an immediate threat of future injury. Either way, Plaintiff's claims do not state a claim upon which relief can be granted, her request for injunctive relief should be denied, and Defendant's Motion to Dismiss should be granted.

Further, because this case is one of over 460 that Plaintiff has filed around the country since October 2019, she failed to comply with FRCP 5, and because the case could have been cleared up entirely with minimal investigation that would have permitted Plaintiff to learn that Harbor's Edge is not obligated to comply with the 2010 ADA Standards, Defendant requests Plaintiff be ordered to pay his costs and fees in defending this lawsuit in accordance with 42 U.S.C. §12205.

Respectfully Submitted,

**FIEBIGER LAW LLC**

Dated: October 5, 2020                    s/Rolf T. Fiebiger
                                          Rolf T. Fiebiger, MN #391138
                                          6800 France Ave S., Suite 190
                                          Edina, MN 55435
                                          Phone: 612.888.6084
                                          rolf@fiebigerlaw.com

**Attorney for Defendant Michael S.
Rasmus, d/b/a Harbor's Edge Motel**